CAVINESS v. FIDELITY CO.

(Filed November 22, 1905).

*Principal and Surety—Subrogation—Executors and Administrators—Devastavit.*

1. A surety company which has been called upon to pay a *devastavit* committed by its principal, an administrator, is entitled to be subrogated to the rights of the creditor against a party who received the money with knowledge of its wrongful appropriation and his rights are exactly those of the creditor.

2. Where an administrator is also a distributee, he is entitled to pay the other distributees and to retain himself, at any time during the administration, the amount to which each is entitled. If he pay more or retains more than is due, he is liable personally and on his bond for the excess.

3. While an administrator is allowed by statute two years within which to settle the estate, he should, when there are no debts or other exigiencies requiring the retention of the funds, pay them to the distributees and they may within the two years maintain an action for them.

4. Where an administrator committed a *devastavit* in February, a party who received the money with knowledge of its wrongful appropriation, can be compelled to answer to the extent of the *devastavit*, but he is not liable for any *devastavit* thereafter on the part of the administrator of which he had no knowledge.

ACTION by J. M. Caviness, Administrator *de bonis non* of Jas. A. Cole against Fidelity & Deposit Co., of Maryland, and others, heard by *Judge R. B. Peebles* and a jury, at the July Term, 1905, of the Superior Court of RANDOLPH. From the judgment rendered, the defendant company appealed.

*L. W. Humphrey* and *Elijah Moffitt* for the defendant company.

*H. A. London & Son* for the defendant Russell.

CONNOR, J.   James E. Cole qualified on November 11, 1902, as administrator of J. A. Cole, deceased, and executed his bond in the penal sum of $18,000 with the defendant company as surety.   On March 3, 1904, he was removed and the plaintiff appointed administrator *de bonis non* of the estate.   This action is prosecuted by the plaintiff against J. E. Cole and the surety company to recover the amount remaining, or which ought to be, in his hands belonging to the estate.   The defendant surety company in its answer alleges that $5,000 of the assets of the estate were paid by the administrator to W. S. Russell on account of certain stock purchased by the administrator and his brother, T. A. Cole; that Russell had knowledge that the said sum was a part of the assets and property of the estate.   The defendant claimed that it was subrogated to the rights of the plaintiff to call upon Russell to refund so much of said amount as should be necessary to indemnify it from loss on account of the *devastavit* of the administrator.   Russell was made a party defendant and filed an answer denying the material allegations of the defendant company's answer.   From the admissions in the

pleadings, findings by His Honor, and the verdict of the jury upon issues submitted, we gather the following facts:

J. A. Cole died intestate leaving five distributees, two of whom were the administrator and his brother, T. A. Cole. Prior to February 5, 1903, the administrator received, on account of the estate, about $9,600. He held a note against one of the distributees for $1,136.92, and owed a note himself of $1,000. Subsequent to February 5, 1903, he received about $400. The total indebtedness of the estate did not exceed $200, the larger portion of which was paid prior to February 5, 1903, leaving in the hands of the administrator on that day about $9,400. On said February 5, 1903, he drew a check upon the assets of the estate in the Bank of Randolph, payable to himself and his brother, T. A. Cole, for $5,000, which was deposited in bank to their credit. On the same day he and his brother purchased from defendant Russell 130 shares of stock in the Enterprise Manufacturing Co. for $20,000, and, on account thereof, gave him a check on their bank account for $5,000—Russell retaining a lien on 166 shares of stock for the balance of the purchase price. Russell had knowledge of the source from which the $5,000 was obtained.

The court below found by an inspection of the accounts of the administrator that the balance due the plaintiff administrator d. b. n. from Cole, former administrator, was $3,699.58, and that the interest of said J. E. Cole and T. A. Cole in the estate was $3,851.55. It appeared that on October 15, 1903, the administrator paid to himself and his brother each $2,000 from the assets of the estate. On said day he paid Mrs. S. F. Caviness, one of the distributees, $2,000—the payment being made by surrender of her note and $862.08 cash. On November 10, 1903, he paid Mrs. Green, another distributee, $500. He paid the Marble and Granite Co. $400, and for taxes, charges of administration,

etc., about $200. He did not pay the note of $1,000, but it is charged to him in his account.

His Honor states that in ascertaining the interest of J. E. Cole in the estate, he has deducted said note, and that he was of the opinion that defendant Russell was liable to account for the amount received by him, but was entitled to deduct therefrom the interest of J. E. Cole and T. A. Cole, which he ascertains to be $3,851.55, from the $5,000, leaving a balance of $1,148.45, for which he gives judgment against Russell, directing him to pay it into court, to be applied to the judgment for $3,699.58 against J. E. Cole and the surety company.

From this judgment the defendant surety company appealed.

No testimony is set out in the record or case on appeal; hence we cannot pass upon the second contention, which His Honor said was made for the first time in the case on appeal. As between the plaintiff and the defendant J. E. Cole, there can be no doubt as to the correctness of the ruling and judgment. This is demonstrated by a simple calculation. . The amount recovered will pay to the distributee, who has received nothing, the one to whom $500 has been paid, and the one to whom $2,000 has been paid, the amount due on their distributive shares, and leave in the hands of the plaintiff the exact amount due J. E. and T. A. Cole to equalize their share.

The principle by which His Honor was guided is announced in *Grant v. Bell,* 90 N. C., 558. The estate, so far as the plaintiff is interested, is settled by the judgment. The defendant surety company insists that it is subrogated to the rights of the plaintiff and is entitled to call on the defendant Russell to refund to it the amount received from Cole, just as the plaintiff could have done. We entertain no doubt that in equity the company is subrogated to the rights of the plaintiff against Russell. Has it any other or higher right

than the plaintiff had? Certainly, as between the other distributees and Cole, the latter was entitled to pay them and to retain himself, at any time during the administration, the amount to which each was entitled. No one except creditors could complain. If he paid more or retained more than was due, he was liable personally and on his bond for the excess. The defendant surety company says that the payment to T. A. Cole and appropriation by himself of the $5,000 was a *devastavit*. This is true so far as the amount was in excess of their interests.

It is elementary that one asserting the right of subrogation stands in the shoes of the creditor, to whose right he is subrogated. His rights are exactly those of the creditor whose debt he has paid. There is no privity of contract between Russell and the surety company. It is insisted that an administrator commits a *devastavit* by paying out the assets to a distributee before the expiration of one year from the date of administration. If there be debts unpaid, this is undoubtedly true; or if he pays one distributee more than his share, to that extent it is a *devastavit*.

This court has held that while the administrator is allowed by statute two years within which to settle the estate, he should, when there are no debts or other exigencies requiring the retention of the funds, pay them to the distributees, and that they may within the two years maintain an action for them. In *Clements v. Rogers,* 91 N. C., 63, this court refused to dismiss an action, brought within the two years, when it was admitted that there were no debts outstanding. In *Allen v. Royster,* 107 N. C., 278, it was held that the plaintiff distributee was not required to allege the non-existence of debts—*Merrimon, C. J.,* saying, in response to a motion to dismiss because the complaint did not negative the existence of debts: "It need not necessarily allege that two years have elapsed next after the administrator qualified as such, and before the action begun, because the administrator might

consent to account fully or partially with the next of kin before such lapse of time, and if there should exist a valid reason why he should not, he should set it up as matter of defence in a proper way. It might turn out that the court would require the administrator to account with the distributees in some measure, and stay the final account until the end of two years." If the distributees had sued the administrator at the time he paid the amount to his brother and himself, the court, upon the facts as they existed on that day, would have sustained the action and required him to pay over the amount in his hands to all of the distributees.

In the condition of the estate on February 5, 1903, no *devastavit* was committed in paying over to himself and his brother the amount due them; to that extent the payment was rightful. Russell is fixed with notice of the conditions as they existed on that day. If he had been called to account on February 6, 1903, Russell would have been compelled to pay the other distributees the difference between the amount received by him and the amount which was due J. E. and T. A. Cole. The fact that more than six months thereafter (October 15, 1903), he paid to himself and his brother $4,000, which was a *devastavit* of which Russell had no knowledge, cannot change or increase his liability, for that was fixed at the time he received the money, February 5, 1903.

We concur with the court below that Russell was not liable for any shortage on the part of Cole, administrator, which occurred after February 5, 1903. Suppose that he had paid Russell the exact amount due his brother and himself on February 5, and six months thereafter committed a *devastavit* by appropriating other money belonging to the estate, is it possible that thereby Russell would have been made liable? Certainly there was no wrong done in paying T. A. Cole to the extent of his interest, and we are unable to perceive any reason why he was not entitled to retain the

amount due himself on that day. The receipt of Russell in excess of the amount due, with knowledge of the facts, was wrongful, and to the extent of the wrong done he must answer to the surety company, just as he would, if called upon by the distributees, have been required to do.

There is no suggestion that there was any actual fraud intended by Cole or Russell at the time of the payment. While the payment of the excess was unlawful, it is not inconsistent with an honest mistake in respect to the amount of their interests in the estate. It is sufficient that we find in the principles of the law a remedy commensurate with the wrong.

If the defendant Russell still holds the stock, we can see no reason why the defendant surety company may not subject Cole's interest by an equitable execution or by supplemental proceedings. As all parties are before the court, it would seem this could be done in this action. Other parties may be brought in and pleadings amended for that purpose if the defendant company be so advised.

With the right to take further action as indicated, the judgment is

Affirmed.